## North Bethlehem Township's Officers.

*Townships — Division of townships — Organization of government — Appointment or election of officers—School law — School districts — Acts of May 18, 1911, May 28, 1915, and July 14, 1917.*

1. After a decree has been entered dividing a township into two new townships, the Court of Quarter Sessions has no authority, under sections 180, 181 and 183 of the Act of July 14, 1917, P. L. 840, to appoint officers for the government of the new townships.

2. Such officers must be elected at the next municipal election occurring at least three months after the formation of the new townships, as provided by chapter iii, art. iv, section 65, of the Act of July 14, 1917, P. L. 840.

3. There is nothing in the School Law of May 18, 1911, P. L. 309, as amended by the Act of May 28, 1915, P. L. 627, relating to the formation of school districts, which justifies such a construction of the Act of July 14, 1917, P. L. 840, as to require the township officers to be appointed by the Court of Quarter Sessions.

4. Where a decree forming two new townships out of an old township was entered on Nov. 14, 1921, the election of the first set of officers for the new townships will be held at the municipal election in November, 1923, and until December, 1923, when the new officers will be installed in office, the township organization of the original township will continue.

5. The first board of school directors in each of the new school districts will take charge of its affairs at the beginning of the then next school year, as defined by section 301 of the Act of May 18, 1911, P. L. 309, as amended by the Act of May 28, 1915, P. L. 627.

Petition for appointment of township officers. Q. S. Washington Co., Feb. Sess., 1921, No. 206.

*Harry F. Moore* and *Acheson & Crumrine*, for petition.

*Robert E. Burnside*, contra.

BROWNSON, P. J., Feb. 27, 1922.—On March 14, 1921, a petition was presented to this court, under article iv of chapter iii of the Township Code of July 14, 1917, P. L. 840, praying for the division of the Township of West Bethlehem into two new townships. It was so proceeded upon that on Nov. 14, 1921, the court entered a decree that the township aforesaid be divided into two separate and independent townships, by a certain line specifically described, that part of the original township lying to the south of said line to be known and designated as "West Bethlehem Township," and that part lying to the north of said line to be known and designated as "North Bethlehem Township." We now have before us a petition of inhabitants of the territory lying north of said division-line, praying the court to appoint a set of township officers for the new Township of North Bethlehem. The theory of this petition is that the division of the old township into two new townships is now in effect and operative, that the several township offices provided for in the code for the government of such townships and the administration of its affairs are in this new township presently existing offices, but standing vacant, and that, therefore, they may be filled by appointment under sections 180, 181 and 183 of the code. No similar petition has been presented for the new Township of West Bethlehem. The pending petition for North Bethlehem Township is resisted upon the ground that this township has not yet come into actual existence, and no vacancies in its township offices exist within the meaning of sections 180, 181 and 183 of the code.

The code provides for the filling of vacancies occurring "by death, resignation or otherwise," words which, if unqualified and unrestrained in their operation by anything else in the statute, might be broad enough to cover the case. But there are two things which indicate that these sections were not intended to empower the court to appoint a board of officers to organize the

government of a new second class township. In the first place, each of these sections contains the provision that the person appointed by the court shall hold "for the unexpired term of the person whose place he is appointed to fill," a provision indicating that by "vacancy" is meant the vacation of a previously filled office. But, in the second place, these sections should be construed so as to harmonize with the provisions of article IV of chapter III. The last section of that article (numbered 65) provides as follows: "All townships formed, under the provisions of this article, by the division of any township of the first or second class shall be townships of the second class. . . . In all townships so formed the officers provided by this act for townships of the second class shall be chosen at the next municipal election occurring at least three months after such formation, and the government constituted by this act for townships of the second class shall go into force on the first Monday of December next following such election."

To hold that we have authority to appoint a set of township officers for the purpose of organizing and putting in operation the government of this new township now would be to absolutely reject and nullify the last clause of the final sentence in the above quotation, because we would thereby be undertaking to cause the government of the township to go into force before the time at which the act explicitly says it shall go into force. This view is strongly corroborated, and the intent and meaning of section 65 are made exceedingly clear by a comparison thereof with section 27, which is a part of article I of chapter III, dealing with the erection of second class townships "out of parts of two or more townships." Section 27 empowers the court, in the case of a township formed by joining together parts of two or more townships, to authorize the holding of a special election of officers for such new township, thus causing its government to be put in operation at once; whereas, section 65, dealing with the formation of townships by the division of an existing township into two or more new ones, postpones the going into operation of the government of new townships thus formed until the first Monday of December following the next regular municipal election. It is perfectly manifest that the legislature intentionally made a difference between the two cases, and that to construe section 65 in such a way as in effect to do away with this difference would be doing violence to the language used. As to whether such a postponement of the organization of townships formed under article IV is wise (which in the present case will be for a period of two years), it is not for us to say; we must take the law as the legislature wrote it.

In the argument it was suggested that if the above view be adopted, the anomalous situation of having the new school districts in operation before the new townships begin to function will be created by reason of the operation of that portion of the School Code of May 18, 1911, P. L. 309, which prescribes when a new school district, formed by the creation of a new city, borough or township, shall be organized. As the existence of such an anomaly might be a legitimate argument against the soundness of the interpretation set forth above (although it might not be sufficient to overcome the effect of the very explicit language of section 65 aforesaid), it will not be improper to consider the School Code, so far as relating to the subject of new townships and school districts. For this reason, as well as because we have been requested by counsel to do so, we shall examine the school law.

Section 101 of the Act of 1911 provides that "each . . . township in this Commonwealth, now existing or hereafter created, shall constitute a separate school district." Section 109 (amended on May 28, 1915, P. L. 627) provides

2 D. & C.

that "if any new school district is made by the creation of any . . . township, . . . such change, so far as it relates to school districts or school affairs, shall take effect at the beginning of the first school year after such new . . . township . . . has been created;" and by section 210 it is provided that "when a new school district is hereafter formed by the creation of a new . . . township, the Court of Common Pleas having jurisdiction shall determine and enter in its decree the class of school districts to which such new district shall belong, and shall appoint a board of school directors for such new school district, which shall serve until the first Monday of December next following the first municipal election occurring more than thirty (30) days after the formation of such new school district."

The word "formation" occurs both in section 65 of the Township Code and in section 210 of the School Code, as part of the language used to describe the times respectively when the first elections by the people shall be held. As used in the Township Code, it unquestionably refers to the decree directing that the territory be set apart as a separate township; in other words, it means the date at which the decree is signed. It is equally clear that this word, as used in section 210 of the School Code, refers to the time when the "creation" of a new township, etc., has the effect of forming or bringing into existence the new school district, and this time is defined by section 109, above quoted, which provides that the creation of a township, etc., shall not take effect in the way of *ipso facto* making a new school district until "the beginning of the first school year after such new . . . township . . . has been created," and accordingly it is at that time that the first board of school directors to be appointed by the court will take office and assume the charge of the school affairs of the new district. The operation of section 210 of the School Code, in a situation like the present one, being thus dependent upon the effect and operation of article IV, chapter III, of the Township Code, the question is, when, under the latter, is the new township "created?" When is it launched upon an independent existence?

Construing this article in the light of what we have already said above, it seems to us that its meaning and effect are this: The new townships into which the decree of the court orders that the original township shall be divided are, between the date of such decree and the date at which section 65 directs that their township governments "shall go into force," in a state of inchoate existence, the process of their creation being incomplete; not until they become entitled, under the provisions of the statute, to have a township government put in operation is their creation fully consummated; and, in the meantime, their status is analogous to that of a child *en ventre sa mere*, not yet born into life and not yet having taken its place in the world as an independently existing individual. Their "creation," in the sense in which this word is used in sections 109 and 210 of the School Code, is not complete until they have the organs, to wit, offices, with which to carry on the functions and operations of corporate life. It is their coming into such complete existence so as to effect a separation of the two portions of the original territory as to township affairs, which is to be followed by a like separation as to school affairs. Interpreting these two statutes in the respective ways above indicated, there will be no anomaly created and no incongruity between the acts; each will fit into its place as a part of a harmonious system.

The conclusions at which we arrive are that the government of neither of the new townships formed by the decree of Nov. 14, 1921, will go into operation until the first Monday of December, 1923, and that the first set of officers, by whom such government is to be organized, will be elected at the municipal

election in November, 1923; that until the first Monday of December, 1923, the township organization of the original township will continue in operation, and that the first board of school directors in each of the new school districts will take charge of its affairs at the beginning of the then next school year as defined by section 301 of the School Code, as amended in 1915, P. L. 627.

And now, Feb. 27, 1922, after argument and consideration, the prayer of the petition is denied.          From Harry D. Hamilton, Washington, Pa.